STATE OF NORTH CAROLINA
COUNTY OF FORSYTH

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

JEFF SIEBERT and VANESSA
SIEBERT,

                  Plaintiffs,

v.

STATE FARM FIRE & CASUALTY
COMPANY and STATE FARM
GENERAL INSURANCE COMPANY,

                  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

26CV007161-330

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

    **NOW COME** Plaintiffs, by and through undersigned counsel, to complain of Defendants by alleging and saying as follows:

## PARTIES

    1.    Plaintiffs Jeff Siebert and Vanessa Siebert (hereinafter collectively referred to as "Plaintiffs" or individually as "Mr. Siebert" or "Mrs. Siebert") are citizens and residents of Forsyth County, North Carolina. Plaintiffs own residential real property located at 130 Nanzetta Way, Lewisville, North Carolina 27023.

    2.    Upon information and belief Defendants State Farm & Fire Casualty Company and State Farm General Insurance Company (hereinafter referred to collectively as the "State Farm Defendants" or "Defendants") are corporations organized and existing under the laws of the State of Illinois, with principal places of business in Bloomington, Illinois. Upon information and belief, the State Farm Defendants were doing substantial business in North Carolina at all times alleged herein.

Electronically Filed Date: 5/6/2026 3:01 PM  Forsyth Superior Court County Clerk of Superior Court

Case 1:26-cv-00551-WO-JEP    Document 6    Filed 06/15/26    Page 1 of 20

## JURISDICTION & VENUE

3. Jurisdiction is proper pursuant to N.C. Gen. Stat. §§7A-240 and 7A-243.

4. The Court has personal jurisdiction pursuant to N.C.G.S. § 1-75.4.

5. The State Farm Defendants have been properly served and brought before the Court pursuant to Rule 4 of the North Carolina Rules of Civil Procedure.

6. Venue is proper pursuant to N.C.G.S. § 1-82.

## FACTUAL ALLEGATIONS

7. On or around May 29, 2020, Plaintiffs purchased residential real property located at 130 Nanzetta Way, Lewisville, Forsyth County, North Carolina 27023 (hereinafter referred to as the "Residence").

8. Plaintiffs moved into the Residence during the height of the COVID-19 pandemic. Plaintiffs lived at the Residence for several years with limited to no issues with the Residence, which allowed them to make aesthetic improvements and enjoy the Residence with their children.

9. On or about June 26, 2023, a severe hailstorm and windstorm impacted the Residence and the surrounding area, including many homes in the same neighborhood.[1] Sustained high wind and hail conditions caused damage to the Residence including significant damage to the roofing system and exterior.

10. At all times relevant to this Complaint, the Residence was insured by the State Farm Defendants under a Special Form Homeowner's Policy, Policy No. 33-ETV-8294 (hereinafter the "Policy"). See **Exhibit 1** for a copy of the Policy's declaration page.

---

[1] Several neighbors in the same neighborhood had property insurance policies issued by State Farm and also had damage as a result of the June 26, 2023 hailstorm and windstorm. The affidavits are mentioned below in the claims for relief, and are attached hereto as Exhibits 8, 9, and 10.

11. At all times relevant to this Complaint, the Policy provided special form coverage for physical loss or damage to the Residence. Damages from the windstorm and hailstorm on June 26, 2023, specifically from the associated windstorm and hailstorm to the Residence and its roof, were covered causes of loss under the Policy, in addition to any losses therefrom. Plaintiffs timely paid all premiums for the Policy, and the Policy was in full force and effect on the date of the loss.

12. On August 2, 2023, Plaintiffs filed a claim with the State Farm Defendants for their covered loss and the State Farm Defendants assigned the loss with claim number 33-53V6-45M (hereinafter the "Claim").

13. On or around August 18, 2023, Sandy Culbertson ("Mr. Culbertson") inspected the Residence on behalf of the State Farm Defendants. Based on that purported "inspection," the State Farm Defendants produced an estimate dated August 20, 2023, for the Plaintiffs' entire Claim, which indicated that the value of the Claim was only $4,742.27. That estimate did not contain an explanation of how that amount would be sufficient to address the obvious damage at the Residence caused by the reported windstorm and hailstorm. The August 20, 2023 estimate grossly, and intentionally, understated and ignored the significant damages to the Residence and its Roof. A copy of the August 20, 2023, estimate is attached hereto as **Exhibit 2**. The August 20, 2023 estimate demonstrates by its value alone Mr. Culbertson's failure to properly inspect the Residence.

14. In response to Mr. Culbertson's failure to properly inspect the Residence, Plaintiffs requested that the State Farm Defendants revisit Mr. Culbertson's estimate given it was obvious that the Claim was significantly undervalued based on the immediate and apparent damage to the Residence following the windstorm and hailstorm.

15. On or around September 19, 2023, the State Farm Defendants produced a second estimate for Plaintiffs' Claim, which indicated that the value of the claim was $5,144.04. Despite this increase, the September 19, 2023, estimate still grossly, and intentionally, understated and ignored significant damages to the Residence and its Roof. A copy of the September 19, 2023, estimate is attached hereto as **Exhibit 3**. The September 19, 2023 estimate demonstrates that the State Farm Defendants still failed to properly inspect the Residence and/or fully consider evidence of damages covered by the Policy.

16. For a second time, Plaintiffs requested that the State Farm Defendants revisit their estimate as it was obvious that the Claim was significantly undervalued, even considering the slight increase in the second estimate.

17. Frustrated with the State Farm Defendants, on or around December 13, 2023, Plaintiffs sent an email to Nick Jitima ("Mr. Jitima"), their State Farm Agent that showed Mr. Jitima the chalked-up hail damage found on shingles by Armor Roofing. Armor was hired by Plaintiffs to perform this inspection only.

18. On January 15, 2024, the State Farm Defendants sent a letter indicating that the Claim had to be reopened to address the additional evidence submitted by Plaintiffs.

19. On or around January 24, 2024, Leroy A. Wickham ("Mr. Wickham"), another adjuster assigned by the State Farm Defendants, arranged a meeting at the Residence with Artisan Roofing ("Artisan"), another roofing company contacted by Plaintiffs to address the claimed damage. Unfortunately, Artisan did not have the equipment to inspect the entire roof, so this inspection had to be rescheduled.

20. On or around February 7, 2024, Mr. Wickham performed his inspection with representatives of Artisan.

21. Plaintiffs hired Armor Roofing and Artisan Roofing to assess the damage and provided their photos and assessment to the State Farm Defendants. Armor Roofing identified hail damage on shingles, and Artisan Roofing provided drone photos of damage to roof vents and shingles—both submitted evaluations were submitted to the State Farm Defendants. This demonstrates that Plaintiffs were compelled to pursue their own investigation due to the State Farm Defendants inadequate inspections.

22. On February 19, 2024, Plaintiffs sent emails to Mr. Jitima summarizing their frustration with the mismanagement and sloppy handling of the Claim and requested a telephone call to discuss the same.

23. On February 20, 2024, Plaintiffs sent emails to Mr. Jitima summarizing the telephone call where Plaintiffs put State Farm on notice of their displeasure with the handling of the Claim.

24. In an effort to mitigate the damages at the Residence, Plaintiffs hired Artisan Roofing to complete repairs to the copper drip edge over the front porch, skylight flashing to address an active leak, and roof vents. Artisan Roofing made the aforementioned repairs on March 15, 2024 and that invoice was submitted to the State Farm Defendants.

25. On or around March 21, 2024, the State Farm Defendants produced a third estimate for Plaintiffs' entire claim, which indicated that the value of the Claim was only $8,231.79. The March 21, 2024 estimate yet again grossly, and intentionally, understated and/or ignored

significant damages to the Residence, including its roofing system. A copy of the March 21, 2024, estimate is attached hereto as **Exhibit 4**.

26. On April 16, 2024, another third-party roofing company, EcoShield, provided the State Farm Defendants with additional drone photos of hail damage found on shingles, downspouts and soft metals at the Residence.

27. On or around April 17, 2024, Plaintiffs received communication from the State Farm Defendants through Mr. Jitima that the Claim was reopened for a third time.

28. Having heard nothing from the State Farm Defendants, Plaintiffs continued to e-mail Mr. Jitima who confirmed that he contacted the desk adjuster, Quinn Kemp ("Mr. Kemp"), directly on May 23, 2024.

29. On May 30, 2024, EcoShield inspected the Residence and chalked hail damage to soft metals and shingles. Representatives of EcoShield provided additional photos to State Farm Defendants depicting the damage.

30. On June 7, 2024, Plaintiffs again reached out to State Farm Defendants with more photos of the damage captured by EcoShield and requested a third adjuster to perform a proper and thorough inspection of the Residence, given that it clearly had not been performed to date given the low value of the estimates produced by the State Farm Defendants, and the obvious damage from the June 2023 hailstorm and windstorm.

31. On June 25, 2024, Mr. Siebert had a telephone conversation with Mr. Kemp to request an additional inspection given the damage depicted in recent photographs submitted to the State Farm Defendants. Mr. Kemp placed Mr. Siebert on hold to review the Claim and eventually

asked Mr. Siebert if he could return his telephone call so that Mr. Kemp could review the Claim further.

32.    Plaintiffs received a call from Mr. Kemp during the evening on June 25, 2024, and Mr. Kemp explained to Mr. Siebert that it was the position of the State Farm Defendants that there was no additional damage. Mr. Kemp, in an attempt to encourage Plaintiffs to stop pursuing the Claim indicated to Mr. Siebert, loosely, that Mr. Kemp was "speaking to Plaintiffs like a family member…" and that "Mr. Siebert has pushed the Claim further than most people and Mr. Siebert should be happy with his effort." In response, Mr. Siebert indicated that he was not satisfied with the handling of the Claim and that Plaintiffs were unable to accept the position of the State Farm Defendants. After the telephone call ended, Plaintiffs received an email letter from Mr. Kemp that indicated that a third inspection would not be performed because there was no visible damage. In sum, it was clear that Plaintiffs submitted multiple photographs of damage to the Residence from a hailstorm and windstorm that the State Farm Defendants never properly inspected.

33.    Despite this additional evidence presented by EcoShield, on June 25, 2024, the State Farm Defendants still maintained that there was not enough evidence to support a third inspection.

34.    Plaintiffs worked with Mr. Jitima to schedule a July 8, 2024 telephone call with Timothy Proctor ("Mr. Proctor"), Mr. Kemp's manager.  Mr. Proctor admitted that the photos provided by EcoShield showed hail damage on soft metals, and admitted that the first two adjusters missed damage, warranting a third inspection, but this time by an engineer.

35.    On July 11, 2024, a representative from EcoShield directly explained the damage to Mr. Kemp on behalf of Plaintiffs to avoid further conflict with the State Farm Defendants.

36. On July 23, 2024, with no movement on the Claim, the Plaintiffs were forced to hire a licensed home inspector and general contractor, Andy Hilton ("Mr. Hilton"), at their own expense to pursue the claim. Mr. Hilton found evidence of hail damage on shingles and soft metals.

37. On July 31, 2024, the State Farm Defendants sent engineer Colby Hietbrink ("Mr. Hietbrink") of YA Engineering Services, LLC to perform an engineering inspection of the damage.

38. Plaintiffs shared Mr. Hilton's report with Mr. Hietbrink so that he could consider it as part of his inspection.

39. On August 21, 2024, Plaintiffs were made aware that Mr. Hietbrink found little to no hailstone damage, and the State Farm Defendants issued a letter that indicated that, in part, soft metals had already been accounted for—that is incorrect and misstatement of the benefits provided to Plaintiffs. See **Exhibit 5**. Frustratingly, this letter was authored by Charity Latimer, who, upon information and belief, had little to no involvement in the Claim up and until the issuance of the August 21, 2024 letter.

40. Upon information and belief, EcoShield then submitted an estimate to repair the soft metals to the State Farm Defendants.

41. On September 29, 2024, Plaintiffs emailed the State Farm Defendants after having heard nothing about the September 3, 2024 submission.

42. Confusingly, on October 3, 2024, Plaintiffs received a generic email from the State Farm Defendants indicating that a certificate of completion was submitted prior to Plaintiffs' submission of their estimate, which was obviously incorrect given Mr. Hietbrink's position and also because the State Farm Defendants did not previously issue payment for hail damage to soft metals.

43. On or around October 15, 2024, the State Farm Defendants produced a fourth estimate for Plaintiffs' entire claim, which indicated that the value of the Claim was $12,696.35. which still woefully undervalued the Claim. See **Exhibit 6** for October 15, 2024 estimate.

44. Mr. Siebert again contacted Mr. Jitima and expressed frustration with how the Claim was handled and asked for a refund of his deductible.

45. On December 9, 2024, the State Farm Defendants sent a revised estimate, increasing the previous estimate by only $2,596.78, for a total of $15,293.13. This increase was a 222% increase of the initial estimate from Mr. Culbertson, but took Plaintiffs' own funds, investigation, and over a year to achieve this result, which still woefully undervalued the Claim. See **Exhibit 7** for December 9, 2024 estimate.

46. On December 10, 2024, Mr. Siebert emailed Mr. Proctor to ask why damages captured by Plaintiffs' roofers were not included in the engineering report.

47. On December 18, 2024, having no response from the State Farm Defendants, Mr. Siebert reached out to Mr. Jitima. That same day, Plaintiffs received a "generic" e-mail from the State Farm Defendants with Mr. Hietbrink's report. Later, that same day, Mr. Kemp called Mr. Siebert. Mr. Kemp advised Mr. Siebert that he was reviewing e-mails between Mr. Jitima and Mr. Proctor. Mr. Siebert asked to speak with Mr. Proctor again.

48. On December 19, 2024, Mr. Kemp called Mr. Siebert to let him know that Mr. Proctor would not be calling Plaintiffs and that if Plaintiffs disagreed with the State Farm Defendants' position based on Mr. Hietbrink's report, that Plaintiffs should consider hiring a lawyer.

49. On December 23, 2024, Plaintiffs filed a complaint with the North Carolina Department of Insurance.

50. On January 7, 2025, the State Farm Defendants responded to the complaint submitted to the North Carolina Department of Insurance. The NC DOI informed Plaintiffs that it was unable to intervene, but that "…the courts may make final determination if you pursue this as a civil matter."

51. On January 21, 2025, Plaintiffs received a denial from the State Farm Defendants. See **Exhibit 11** for January 21, 2025 denial.

52. On February 4, 2025, Plaintiffs hired Scott Lockamy of Leverage PA Firm to represent their interests and to try to pursue the Claim without litigation. The State Farm Defendants were difficult, and combative with Mr. Lockamy.

53. On February 11, 2025, the North Carolina Department of Insurance (the "DOI") responded and directed Plaintiffs that their review of the claim determined that the dispute between Plaintiffs and the State Farm Defendants was a civil, contractual dispute.

54. Seeking further clarification, Mr. Siebert contacted the DOI and spoke with Laura O., Property and Casualty Insurance Consumer Analyst. Mr. Siebert was told by Laura O. that Anthony, a claims handler for the State Farm Defendants, said that Plaintiffs' only recourse was to hire their own engineer, or hire a lawyer.

55. At the direction of the State Farm Defendants, Plaintiffs continued on with their own investigation during the Spring and Summer of 2025. It became clear that Plaintiffs had no other option but to hire legal counsel to pursue the Claim.

56. On September 3, 2025, Plaintiffs executed an Updated Sworn Proof of Loss to reflect their current claimed damage. See **Exhibit 12**.

57. On September 8, 2025, Counsel for Plaintiffs sent a time-limited demand and asked Defendant to tender payment pursuant to the September 3, 2025 Updated Sworn Proof of Loss, and other documents for Defendant's consideration, including multiple affidavits from neighbors that experienced roof damage during the same June 26, 2023 wind and hail event.

58. On September 20, 2025, Counsel for Plaintiffs received a letter from Defendant postmarked September 25, 2025, that had a copy of a previous letter that Plaintiffs received in January 2025, with no explanation. See **Exhibit 13**.

59. On October 12, 2025, Counsel for Plaintiffs received a follow-up letter that simply indicated that "The claim has been examined in detail, and currently, no further inspection is deemed necessary." See **Exhibit 14**. There was no response to the Updated Proof of Loss, the affidavits from neighbors, among other supplemental information that Plaintiffs submitted for the consideration of the State Farm Defendants.

60. Since the Claim was opened, and continuing through the filing of this action, Plaintiffs have repeatedly sought clarification of the State Farm Defendants' coverage position. Plaintiffs made those efforts through employees, representatives, and agents of the State Farm Defendants; through their insurance agent; through the North Carolina Department of Insurance; through their public adjuster; and, ultimately, through legal counsel. Despite these efforts, the State Farm Defendants failed to provide a clear, consistent, or adequate explanation of their coverage position. As a result, Plaintiffs were forced to undertake their own investigation into the loss. When the Claim remained unresolved despite Plaintiffs' repeated requests for information and their

continued investigatory efforts, Plaintiffs were left with no reasonable alternative but to file this lawsuit.

61. At all times relevant hereto, Plaintiffs made themselves and the Residence available to the State Farm Defendants, their agents, and their representatives and fully cooperated with the State Farm Defendants, their agents, and their representatives to inspect and investigate the damage caused by the hailstorm and windstorm on June 26, 2023.

62. The State Farm Defendants have failed to provide a reasonable basis for their failure to cover the expenses associated with Plaintiffs' damages to their roof, or for their protracted investigation and unreasonable positions taken in repeatedly undervaluing Plaintiffs' Claim.

63. At all times, throughout the investigation of the Claim, Plaintiffs complied as promptly as possible with every request made by the State Farm Defendants for information regarding the Claim and have otherwise fulfilled all conditions precedent and contractual obligations under the Policy prior to the filing of this lawsuit.

64. Without the State Farm Defendants paying the claim and honoring the Policy, Plaintiffs have done everything in their power to mitigate damages, but are unable to return their Residence to its pre-loss condition without the funds that are owed and due under the Policy.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

65. Plaintiffs reallege and incorporate the preceding allegations as if set forth verbatim herein.

66. The Policy constitutes a valid and enforceable contract between the Plaintiffs and the State Farm Defendants.

67. The State Farm Defendants have breached the Policy by failing to provide the benefits, coverage, and payments due thereunder.

68. As a direct and proximate result of the State Farm Defendants' breach of the Policy, the Plaintiffs have been damaged in an amount set forth that is attached hereto, and Plaintiffs are further entitled to consequential damages as proven through discovery and trial.

69. Plaintiffs' damages are in excess of this Court's jurisdictions threshold of Twenty-Five Thousand Dollars ($25,000.00).

70. Plaintiffs are entitled to prejudgment interest at the legal rate of eight percent.

## SECOND CLAIM FOR RELIEF
### (Common Law Bad Faith)

71. Plaintiffs reallege and incorporate the preceding allegations as if set forth verbatim herein.

72. The State Farm Defendants' conduct, actions, omissions and refusals to timely and promptly adjust and pay the Claim constitutes bad faith in one or more of the following particulars:

   a. Defendants breached the covenant of good faith and fair dealing;

   b. Defendants demonstrated a willful, oppressive forestalling of payment in order to bring fiscal pressure to bear upon Plaintiffs for Defendants' own advantage and financial gain;

   c. Defendants misused their power and authority in such a way as to be tantamount to outrageous conduct;

   d. Defendants recklessly and wantonly disregarded Plaintiffs' rights as an insured under the Policy;

HOWARD STALLINGS LAW FIRM
Attorneys at Law
Raleigh, North Carolina
13

e. Defendants failed in good faith to effectuate prompt, fair, and equitable settlement of the Claim after liability had become reasonably clear;

f. Defendants withheld payment for the Plaintiffs' loss without a valid basis under the contract the provisions of the Policy;

g. Defendants acted in the manner outlined in Plaintiffs' Third Claim for Relief;

h. Defendants grossly undervalued the initial loss by issuing an estimate of only $4,742.27 based on a cursory inspection by Sandy Culbertson, despite visible, significant hail damage to the roof and exterior;

i. Plaintiffs were forced to initiate their own investigation and submit photographic evidence of damage after Defendants failed to conduct a reasonable inspection or provide a timely adjustment;

j. Defendants repeatedly issued inadequate estimates and refused to authorize a full roof replacement, even after receiving clear evidence from multiple roofing companies contrary to its obligations under the Policy;

k. Defendants repeatedly delayed meaningful action and reopened the claim multiple times without resolution despite multiple requests and mounting evidence from Plaintiffs—demonstrating a pattern of obstruction and indifference;

l. Defendants continued to delay payment and deny full coverage, even after a senior claims representative admitted that prior inspections missed covered damage, which would force Plaintiffs to shoulder repair costs themselves;

m. Defendants attempted to dissuade Plaintiffs from pursuing their claim, with one State Farm adjuster telling Mr. Siebert he had "pushed the claim further than most" and should be "happy with his effort"—an attempt to pressure Plaintiffs into acceptance;

n. Plaintiffs' requests for escalation and clarification were ignored or dismissed by Defendants, including an explicit refusal by Mr. Proctor to speak with Plaintiffs after they expressed dissatisfaction with the engineer's report;

o. Despite evidence that neighboring insureds received full roof replacements from Defendants after the same storm, Plaintiffs were denied comparable coverage under nearly identical circumstances;

p. Defendants' final estimate reflected a 222% increase from the initial offer, but only after a year of delay, advocacy, and personal expense—underscoring that the original adjustment lacked any good-faith effort;

q. Defendants failed to consider Plaintiffs' Updated Sworn Proof of Loss, and other pertinent evidence to the adjustment of the Claim; and

r. Defendants otherwise acted in bad faith as shall be shown through discovery and proven at the trial of this action.

73. Defendants' acts and omissions show reckless indifference to Plaintiffs' rights, oppression, insult, rudeness, caprice, and willfulness. The same constitutes Common Law Bad Faith.

74. As a result of the acts and omissions of the State Farm Defendants, Plaintiffs have sustained damages and losses and are entitled to recover punitive compensatory damages in an amount to be proven at trial.

75. Plaintiffs' damages exceed this Court's jurisdictional threshold of Twenty-Five Thousand Dollars ($25,000.00).

**THIRD CLAIM FOR RELIEF**
**(Unfair & Deceptive Trade Practices)**

76. Plaintiffs reallege and incorporate the preceding allegations as if set forth verbatim herein.

77. The State Farm Defendants are, and at all times relevant hereto, were engaged in the business of selling and writing insurance policies and adjusting the claims thereunder, and, at all times alleged herein, its actions were in or affecting commerce within the State of North Carolina.

78. Upon information and belief, the State Farm Defendants engaged in unfair and deceptive acts and practices in the distribution, marketing and selling of insurance policies to consumers, and in investigating, adjusting, and settling claims brought under such policies, including the Claim and the Policy as follows:

    a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

    b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

    c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

**HOWARD STALLINGS LAW FIRM**
Attorneys at Law
Raleigh, North Carolina
16

d. Failing to affirm or deny coverage of claims within a reasonable time after estimates have been submitted;

e. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

f. Compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

g. Misrepresenting the scope of covered damage by issuing an initial estimate of $4,742.27, despite obvious storm-related damage and photographic evidence submitted shortly thereafter;

h. Failing to promptly and fairly investigate the claim, requiring Plaintiffs to submit multiple rounds of evidence that Defendants either disregarded or failed to meaningfully review;

i. Refusing to authorize full payment and continually minimizing the loss despite receiving damage assessments from Artisan Roofing, Armor Roofing, EcoShield, and a licensed contractor at the time and expense of Plaintiffs;

j. Reopening the Claim on multiple occasions only after continued pressure, reflecting an unreasonable claims-handling process that caused protracted delays and confusion;

k. Admitting that previous adjusters had missed hail damage, and yet Defendants did not issue payment commensurate with its own findings—demonstrating a lack of good faith and transparency;

l. Making statements calculated to discourage Plaintiffs from pursuing the full value of their claim, implying it was exceptional for them to continue pushing;

m. Sending conflicting and inaccurate communications, including an email incorrectly stating that a certificate of completion had been filed before Plaintiffs even submitted a full estimate;

n. Providing inconsistent treatment compared to Plaintiffs' neighbors, who received full roof replacements under nearly identical policies and damage circumstances, as detailed in the affidavits of Jae S. Park and the Spatzes (See Exhibits 8, 9, and 10);

o. Forcing Plaintiffs to hire their own experts, adjusters, and inspectors at personal expense, effectively shifting the burden of the insurer's own duties onto the insureds;

p. Issuing a revised estimate that reflected more than double its original assessment, confirming that Defendants undervalued the claim without justification after over a year of delay and repeated lowball offers;

q. Issuing communication regarding policy benefits that misstates the status of the Claim (See Exhibit 5);

r. Failing to consider the Updated Sworn Proof of Loss submitted by Plaintiffs;

s. Failing to consider other evidence submitted by Plaintiffs, despite Defendants directing Plaintiffs that the burden of the investigation of the Claim was their own; and

t.  Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled.

79.  The State Farm Defendants' above-described conduct, all in violation of N.C.G.S. § 58-63, was unfair, unscrupulous, immoral, and injurious to consumers, and therefore offended the public policy standards established by N.C.G.S. § 75-1.

80.  As a proximate result of the State Farm Defendants' conduct, Plaintiffs are obligated for attorneys' fees and costs associated with this action, and N.C.G.S. § 75-16.1 provides for the recovery of such expenses.

81.  The acts and omissions were unfair and deceptive under N.C.G.S. § 75-1.1. As a result of the State Farm Defendants' acts, as herein described, Plaintiffs have suffered damages in an amount equal to the benefits due under the Policy as well as consequential damages to be proved at trial.

82.  In addition, Plaintiffs are entitled to treble damages pursuant to N.C.G.S. § 75-16.

83.  Plaintiffs damages exceed this Court's jurisdictional threshold of Twenty-Five Thousand Dollars ($25,000.00).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray unto the Court the following requests for relief:

1.  That Plaintiffs have and recover of Defendant a sum equal to the amount of the Updated Sworn Proof of Loss, $98,513.21, equal to the benefits due under the Policy, as well as consequential and other contractual damages to be proven at trial and other benefits due under the Policy, among other expenses;

**HOWARD STALLINGS LAW FIRM**
Attorneys at Law
Raleigh, North Carolina
19

2. That Plaintiffs be awarded treble their contract and compensatory damages and extra expense as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at their election, contract, compensatory, and punitive damages;

3. That the Court tax prejudgment interest on the compensatory award and post-judgment interest on the entire judgment as permitted by law;

4. That the Court tax Plaintiffs' attorney's fees against Defendant;

5. That Plaintiffs have a jury trial on all issues properly triable; and

6. That Plaintiffs have such other and further relief as the Court may deem just and proper.

This the 6th day of May, 2026.

**HOWARD STALLINGS LAW FIRM**

/s/ Rebecca H. Ugolick
Rebecca H. Ugolick (State Bar No. 48126)
5410 Trinity Road, Suite 210
Raleigh, North Carolina 27607
T: (919) 821-7700
F: (919) 821-7703
E: rugolick@howardstallings.com
*Attorney for Plaintiffs*